SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. HERMANN, OSB #126353**
Assistant United States Attorney
nicole.hermann@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00505-SI** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JULIO CEASAR RODRIGUEZ GARCIA,** | |
| **Defendant.** | |

Defendant comes before the Court after pleading guilty to possession with the intent to distribute fentanyl. Based on defendant's active role in distributing fentanyl in Portland, and consistent with the plea agreement, the government recommends a sentence of 30 months of imprisonment, followed by a five-year term of supervised release, and a $100 fee assessment.

## I. The Offense Conduct

In late September 2025, the Westside Interagency Narcotics (WIN) team began an investigation into a distributor of fentanyl in the greater Portland area. PSR ¶ 18. The WIN team

received information from a confidential informant (CI) regarding a distributor known to the CI only as "Alex" with an identified phone number used to arrange sales. *Id*.

Throughout the month of October 2025, the WIN team used the CI to set-up two controlled buys with the distributor "Alex." PSR ¶¶ 19 – 23. At each controlled buy the same male (defendant) arrived and sold the CI an amount of fentanyl. *Id*. During the controlled buys and accompanying surveillance, investigators identified two vehicles associated with the distributor, one of which was registered in the defendant's name. PSR ¶ 20. Through ongoing surveillance, investigators also determined that the defendant resided in unit #19 of the Loganberry Commons Apartments. PSR ¶ 24. Investigators subsequently obtained federal search warrants for the residence and vehicles identified as defendant's during the investigation. *Id*.

The search warrants were executed on November 10, 2025. PSR ¶ 25. As investigators arrived, defendant was observed exiting the residence and entering a vehicle parked nearby (a Volkswagen Jetta) and was taken into custody. *Id*. A search of the defendant's person revealed $1,932 in U.S. currency, a 100 peso bill, and 8.5 net grams of fentanyl powder divided into two sandwich bags. *Id*. Inside the Jetta, investigators located assorted drug distribution paraphernalia, including a box of unused plastic sandwich bags, multiple used sandwich bags with white powdery residue, a roll of tinfoil, rubber bands, brown tape, plastic wrap, and two plastic spoons containing a brown, honey-like substance that smelled similar to vinegar. PSR ¶ 26.

Inside the defendant's bedroom, investigators found $51,627 in U.S. currency, as well as additional drug distribution paraphernalia to include digital scales with white powder residue, a set of index cards containing drug ledgers, and empty narcotics packaging labeled "Rolex 19." PSR ¶ 27. They also located and seized 1,027.8 net grams (1 kilogram) of fentanyl powder divided into 53 plastic baggies, a partial brick of fentanyl powder weighing 576.5 gross grams,

and a taped-up brick of fentanyl powder weighing 1,075.7 gross grams. *Id*. In total, investigators located 2.6 kilograms of fentanyl. PSR ¶ 28. In a post-arrest interview, defendant admitted to selling fentanyl to 4 or 5 customers in the Portland area and netting a profit of roughly $1000 for each bulk sale of fentanyl he distributed. PSR ¶ 29.

## II. The Charges & Guilty Plea

Defendant was initially charged by federal complaint on November 11, 2025. ECF No. 1. Defendant made his first appearance on the complaint on November 12, 2025. ECF No. 3. On December 9, 2025, a federal grand jury returned a one-count indictment charging defendant with Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(A)(vi). ECF No. 6. On June 12, 2026, defendant pled guilty to Count 1, Possession with Intent to Distribute Fentanyl. ECF No. 18.

## III. Guideline Computations

The government agrees with the computations as outlined in the PSR. The parties agree that defendant's base offense level is 30 under USSG §2D1.1(a)(5)(A) and (B)(i). PSR ¶ 34. The parties and the PSR arrive at a base offense level of 30 based on the determination that defendant qualifies for a mitigating role reduction pursuant to USSG §3B1.2, which applies a two-level reduction to the base offense level (reducing it from 32 to 30) under USSG §2D1.1(a)(5)(A) and (B)(i). PSR ¶ 34.

The government agrees with the PSR that a two-level adjustment for role as a minor participant under USSG §3B1.2(b) applies. PSR ¶¶ 37 – 43. The parties agree per the plea agreement that the defendant does not qualify as a minimal participant but does qualify as a minor participant. ECF No. 19 at ¶ 6. However, the parties do not have an agreement as to the appropriate adjustment under USSG §3B1.2(b). *Id*. The government agrees with the PSR's

discussion of the applicability of the available adjustments under USSG §3B1.2(b), in particular the fact that while the defendant was acting at the direction of others, he was allowed to maintain a small customer base, package the drugs, and keep records independently. PSR ¶¶ 42 – 43. Given the facts of the case and the special instruction(s) laid out in USSG §2D1.1(e)(2)(B)(ii), the government agrees a 2-level adjustment for minor role is appropriate. PSR ¶¶ 40, 43.

The parties further agree that defendant meets the criteria set forth in USSG §5C1.2(a)(1)-(5) and is eligible for a two-level safety valve reduction under USSG §2D1.1(b)(18). PSR ¶ 35.

Defendant has no criminal history points and receives a criminal history score of zero; as a result, he is eligible for an additional two-level reduction under USSG §4C1.1(a) as a zero-point offender. PSR ¶ 46.

Defendant's timely plea of guilty demonstrates that he fully admits and accepts responsibility under USSG § 3E1.1 for his unlawful conduct in this case, which is reflected in a three-level adjustment for acceptance of responsibility. PSR ¶¶ 47 – 48.

The government does recommend an additional two-level reduction in defendant's offense level for the early resolution of his case pursuant to the plea agreement. PSR ¶ 120.

Finally, the government agrees with Probation that defendant scores zero criminal history points, placing him in CHC I. PSR ¶ 53.

In summary, the government made the following calculations in determining the defendant's total offense level:

| **Enhancement** | **Government's Position** |
|---|---|
| Base Offense Level —<br>USSG § 2D1.1(a)(5)(A) and (B)(i) | 30 (not contested) |

| | |
|---|---|
| Mitigating Role Adjustment —<br>USSG §3B1.2(b) | -2 (contested, PSR ¶¶ 37 – 43) |
| "Safety Valve" Criteria —<br>USSG § 2D1.1(b)(18) | - 2 (not contested) |
| Acceptance of Responsibility—<br>USSG § 3E1.1 | - 3 (not contested) |
| Certain "Zero-Point" Offenders —<br>USSG § 4C1.1 | - 2 (not contested) |
| **Total Offense Level** | **21** |
| 18 U.S.C. § 3553(a) — | - 2 (early resolution, not contested) |
| **Government's Total Offense Level** | **19** |
| **Criminal History Category** | **I (PSR ¶ 53)** |
| **Resulting Guideline Range** | **30 - 37 months** |

## IV. Government's Sentencing Recommendation

Defendant appears in federal court for the first time for his role in the trafficking of fentanyl in the greater Portland metro area. Defendant was involved in the delivery of fentanyl to several customers on a regular basis and netted a small profit for his endeavors. While defendant was not the leader or organizer of the organization, he picked up his supply and dropped off a quantity of profits in exchange, he was certainly not a minimal participant in the delivery. Defendant maintained his own customer base, held over two and a half kilograms of fentanyl in his residence, made a profit from the sales, and benefited from having a vehicle and residence provided for by his drug distribution efforts. The government recognizes that defendant has no criminal history and has experienced traumatic events in his life before coming to the United States, however, defendant's involvement in the distribution of fentanyl was not minimal. The guidelines outlined above already recognize the defendant's minimal record and willingness to take accountability and resolve his case. The government believes a low-end guidelines sentence is therefore appropriate, and further reductions in the sentence are not warranted.

The government recommends a low-end guidelines sentence of 30 months of imprisonment. The government's sentencing recommendation is appropriate to hold defendant accountable for his actions, promote respect for the law, act as a deterrent, and provide just punishment for the offense. Most importantly, this sentence would protect the community from this offender for the foreseeable future.

## V. Forfeiture

The current status of forfeiture for the defendant is that the Government has seized $51,627.00 in U.S. Currency, which is in the custody of the US Marshal Service for the Department of Justice. The seized property is still in the noticing of forfeiture process, and it is anticipated that this U.S. Currency will be forfeited to the Government by separate order at the conclusion of noticing in this case.

## VI. Conclusion

Based on the foregoing, the government recommends that the Court impose a sentence of 30 months' imprisonment, followed by a 5-year term of supervised release, subject to the mandatory, standard, and special conditions proposed by the Probation Office, and a $100 statutory special assessment fee.

Dated: August 27, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*[/s/ Nicole M. Hermann]*
NICOLE M. HERMANN, OSB #126353
Assistant United States Attorney